The Chief Justice
delivered the opinion of the coart.
This action was brought by the plaintiffs as endorsees against the defendant as endorser of two promissory notes drawn by one Thomas Parker. The question is, whether sufficient notice of non-payment of the notes was given by *309 the plaintiffs to entitle them to have the cause submitted to the jury; the Court of Common Pleas having ordered them to he non-suited for the want of such notice.
The first of those notes became due on the 15th August, 1828, when payment was demanded of the cashier of the plaintiffs. Two notices of non-payment and protest were made out. One of them, directed to the defendant, was on the same day delivered in Paterson, by the clerk of the notary to a Mr. Butler, with whom the clerk was previously unacquainted, who informed the clerk it was his brother to whom the notice was directed, that he was going home and should see his brother, and would give him the notice as soon as it could be sent by mail. It is manifest that the delivery thus made cannot stand for personal service on the endorser, nor excuse the plaintiffs from farther proof that it actually camo in due season to his hands. Indeed the plaintiffs’ counsel do not insist that this delivery is sufficient proof of service. The other notice was directed to the defendant at Dashville, Hew Jersey, and was put into the post-office *at Paterson, in time for the first mail. But the defendant resided at Dashville, Ulster county, Hew York; and although the clerk of the notary was ignorant of his residence, and was informed by the brothpr, somewhat vaguely, that he lived a few miles just over there, at Dashvilie, but he did not know in what county, and the clerk did not ask in what state, yet' the cashier was fully apprised of his residence, had mentioned it to the directors at the time the note was discounted, and had received instructions from the defendant to direct to him at Dashville Falls, Ulster county, Hew York. The plaintiffs, therefore, know the residence of the defendant, and the clerk of the notary would have been correctly informed had he inquired of the cashier, when he demanded payment of the note. Sending a letter by the mail in due season, properly directed, was held by all the court to be sufficient in Ferris v. Saxton, *310 South. 19, 20, 25. But a letter misdirected, when information was readily attainable, and when the residence was actually known to the plaintiffs, cannot be excused by any want of actual information of the notary’s clerk, or by the inquiries which, in this instance, he made; for in this part of the transaction, the notary is so much the mere agent of the endorsees, that he must be .deemed to have knowledge of whatever in respect to the place of residence wras known by-them. If a letter, thus misdirected, had been sent by the plaintiffs, or their cashier, instead of the notary’s clerk, it would most clearly fall entirely short of the notice or the excuse of diligence, which is requisite to fix the responsibility of the endorser. When done by the notary’s clerk, it can claim no more favor. Putting this notice, then, into the post-office at Paterson, was not sufficient to sustain the case on the part of the plaintiffs. Is there otherwise proof of due diligence on the part of the endorsees so as to fix the liability of the endorser ?
A notice was produced on the trial by the counsel of the defendant, directed to T. 0. Butler, junior, esq., Dashville, New Jersey, and post-marked New York, August 18th. Thomas 0. Butler testified that from the post-mark on the back of the notice he had no doubt it'was marked in New York on the 18th of August, and went directly to his son, the defendant, at Dashville ; *and that it was marked, free, as he supposed, because the postmaster in New York knew that the defendant was postmaster at Dashville; but he did not know that his son actually received it, or that it went to Dashville, in the state of New York; and that the first time that he saw the notice was last March, 1820, at that place [Hackensack] in the hands of the defendant’s attorney. Except that the notice was in the hands of the attorney in March, all the rest of this verbal testimony is mere inference drawn from the appearance of the written document.
*311 Whether this paper is the notice delivered to the brother, or that placed in the post office at Paterson, is left in doubt, although strong circumstances lead to the belief that it is the former. The clerk in the post office at Paterson told the notary’s clerk there was no such post office in the United States as Dashville, and on examining the register he could find none of that name. Hence it is probable the letter remained in the post office at Paterson, as they knew not whither to send it. Moreover, the letter produced, bears the post mark of New York, and not that of Paterson. Tho mark of New York raises a strong presumption that it there first came into the mail, as it is usual and regular to mark a letter at the office of deposit, and irregular and unusual to mark it at any other office through which it may pass in the transmission to its place of destination. But whichsoever of the notices this may be, will not perhaps materially vary the result. There is no proof of the usual or direct route of the mail from Paterson to Dashville; no proof that this route is through tho city of New York, nor that a letter sent through that city will arrive as early as by the direct route. There is no proof that a letter mailed at New York would reach Dashville as early as by the usual or direct route from Paterson, nor that a letter deposited in the office at Paterson on the 15th or 16th of August, and found in the office at New York on the 18th, if it should go a direct route from the latter to Dashville, would reach there as early as by the direct and ordinary route from Paterson. These inquiries would have been unnecessary, if the letter, placed in the post office, had been properly directed — but being misdirected, and that too by an endorsee *knowing the correct direction, they became indispensable. There was, then, no ground for the jury to infer, or believe, that the notice went by the ordinary course of the mail, or reached the defendant as soon as if transmitted by the ordinary course. The plaintiffs totally failed to give *312 such evidence as, raising a just and reasonable presumption of service, may stand in the stead of proof of actual service.
But the plaintiff’s counsel insist, as this notice is proved to have been in the hands of the defendant about seven-months after the note became due, the conclusion is, that the defendant received it by due course of mail, and if otherwise received, he might and ought to have shown in-what manner he became possessed of it. I am not aware-that the law raises any such presumption except where the-letter has been properly directed — and to require the-defendant to show at what time, or in what manner, the letter came to his hands, when so misdirected, is to change the relative duties of the parties, to relieve the endorsee from the strict proof required of him, and to call on the endorser, who, it is to be recollected, becomes responsible only on the performance of the condition on which his obligation rests, to perform what would in general be impracticable. The argument of the plaintiff’s counsel appears tome abundantly repelled by the remarks of the court in the-case of Ferris v. Saxton. C. J. Kirkpatrick said, “ The-notice required by the law is an actual real notice, such a one as will apprize a mam of his situation, his liability, his danger, such a one as will enable him to look after -his-effects and secure his property. Every thing short of this-is a'mere mockery.” Southard, J. said, “ It is an essential part of the contract and designed for his benefit, as it is presumed many means of obtaining payment-through the assistance of friends, or otherwise, may remain to him.”’ And again, “ The notice is of the essence of the contract. It creates the liability to pay. It ought not to rest upon-presumption and inference. Legal and sufficient evidence of its existence ought to be given, or the court should not-permit the jury to guess 'and presume away a party’s-rights.”
*313 In respect to the first note, then, I think the direction of tho Court of Common Pleas was right.
The second note became due on the 17th September, 1828. *The notice was addressed on the inside to Thos. C. Butler, jun., and on the outside to Mr. Thos. C. Butler, Hew York, whither it was sent by the first mail. Thos. C. Butler, called by the plaintiffs,,testified, among other things, that he received it by due course of mail; noticed that it was directed on the inside to his son ; but withheld it and did not send it to his son, because he knew it was not a legal notice, and in order that his son might not be fixed with the payment. He afterwards, but at what time he could not say, communicated the contents to his son.
The plaintiffs’ counsel insists that under the circumstances of this case, Thomas C. Butler should be considered as agent of the defendant for the purpose of receiving and forwarding letters and notices, and that the notice was sufficient to charge the defendant.
Thos. 0. Butler testified that it was his custom frequently to receive letters and other things for his son, and felt-bound, as a matter of course, to forward any letters or notices which he received for his son; but in this case he did not, as he knew it would fix his son with the payment of the note. There was no particular agreement between him and his son, as to his receiving and forwarding letters, but he did it as a matter of course.
How if the defendant had agreed with the hank that notices for him should bo left with his father, or if ho had given general directions that letters addressed to him should be sent there, or if there had been even an agreement between the father and son, that the former should receive and forward letters and notices intended for the latter, there might have been some room to raise a question as to the propriety of the notice in the present instance; but the whole appears to have been a matter of courtesy, and could not therefore justify, in any wise, the endorsee in a departure from the ordinary rules of service.
*314 Cornelius Blauvelt testified that he was an agent for the defendant at his works, in Bergen county, until March, 1828, and that the defendant, after he went to Dashville, in May or June, 1827, ordered him to direct his letters to Thos. 0. Butler, New York, or to Butler and Brothers, New York, and they would reach him ; and the witness did so both before and after the establishment of the post office at Dashville.
*Upon this testimony it is to be remarked that it was a specific direction to a particular agent — -not communicated to the plaintiffs or the notary — and not a general direction of which others had a legal right to avail themselves ; moreover it ceased with that agent several months before these notes became due; for the next, his successor, Ackerman, testified that he sent the goods to Butler and Brothers, New York, but the letters which were intended for the defendant were addressed to him at Dashville falls, Ulster county, New York.
There seems, then, to be nothing in the testimony shewing a special agreement, or genei’al custom, which will sustain the sending of a notice addressed to the father in New York.
But it appears to me this argument of the defendant’s counsel, as to the sufficiency of the notice, is conclusively repelled by the testimony of Mr. Parsons, the cashier of the bank — that in April, 1828, until which time he understood the defendant resided in Bergen county, he received a letter from the defendant “ requiring him to direct to him at Dashville falls, Ulster county, New York;” and when the note was discounted, the directors were informed by the cashier, of Butler’s place of residence. When the residence of the endorser was known, and he had actually given orders as to the mode of directing his letters, any deviation therefrom, or from the ordinary course of transmission to the place of his residence, was assumed at the risk of the holders of the note. The mode of transmission adopted in this case is in *315 no wise sanctioned by the information which the clerk of-the notary received from the book keeper of Mr. Holsman, that “ the defendant was one of the firm of Butler and Brothers, who carried on business in New York city.” The plaintiffs and their cashier knew his residence, and had orders where to address him, and the notary’s clerk must be held to have acted with such knowledge. The information was incorrect, as appeared by the testimony of Thomas G. Butler.
The notice with respect to the second note was insufficient. Upon the whole I am of opinion the judgment should be affirmed.
Judgment affirmed.